IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

DANNY S. JIMMERSON, Register No. 46208, )
by and through his Guardian ad Litem, )
CARLEAN BOUDREAUX, )
                                )
                Plaintiff, )
                                )
                     v. )    No. 09-4124-CV-C-SOW
                                )
STATE OF MISSOURI, et al., )
                                )
                  Defendants. )

**REPORT AND RECOMMENDATION**

On October 26, 2009, a hearing was held on plaintiff's motion for temporary restraining order alleging that he is being denied necessary medical care and that such denial is life-threatening.[1] Plaintiff seeks immediate transfer to a major medical facility and to be seen by a Board-Certified Cardiologist, Neurologist and Nephrologist. Plaintiff did not appear in person, but appeared by counsel.[2] Counsel for defendants Correctional Medical Services and Missouri Department of Corrections were also present.

The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy. See Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The district court should consider: (1) the threat of irreparable harm to the moving party; (2) the weight of this harm as compared to any injury an injunction would inflict on other interested parties; (3) the probability that the moving party will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 113 (8th Cir.1981) (en banc). "The party seeking injunctive relief bears the burden of proving these factors." Lankford v. Sherman, 451 F.3d 496, 503 (8th Cir. 2006).

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

[2] Plaintiff is represented by counsel and his aunt, Carlean Boudreaux, who was appointed as his guardian ad litem on October 8, 2009, for purposes of this case.

Here, the plaintiff seeking preliminary injunctive relief was convicted of capital murder in 1982 and is serving a mandatory minimum sentence of fifty years. He suffered a stroke in 2005 and currently suffers from dementia, hypertension and Hepatitis C. Plaintiff has been permanently assigned to the TCU (Transitional Care Unit) at South Central Correctional Center (SCCC) in Licking, Missouri. TCU provides 24-hour nursing care and regular contact with doctors.

Plaintiff's treating physician, who is also the medical director at SCCC, Dr. Ibrahim, testified at the hearing. Dr. Ibrahim testified that he has been treating plaintiff for about two years, beginning when plaintiff was assigned to TCU at SCCC. Dr. Ibrahim testified that he sees plaintiff for official appointments monthly, but sees and interacts with plaintiff daily when making rounds. Dr. Ibrahim indicated plaintiff is currently clinically stable and that in his professional medical opinion, there is no clinical reason for plaintiff to be transferred to a hospital or undergo further additional testing beyond the extensive testing already completed on plaintiff. Dr. Ibrahim testified that most of the tests recommended by Dr. Dean, a neurologist, in October 2005, have, in fact, been completed, and the few that were not were determined unnecessary based on the many tests already completed which indicated either normal or negative results. Dr. Ibrahim testified that in his professional opinion, plaintiff has received the necessary and appropriate diagnostic testing, necessary medications and is not exhibiting symptoms requiring further testing or medications. Dr. Ibrahim testified that there is no evidence plaintiff's medical condition is correctable, and further noted that measures are being taken to reduce plaintiff's general medical risks, such as ensuring plaintiff's compliance with his hypertension medications. Dr. Ibrahim testified that plaintiff is not in good health, but is receiving appropriate medical care.

Plaintiff's two experts, Drs. Francisco and Schneider, were nonexamining physicians who have reviewed plaintiff's medical records[3]. Both doctors testified that further diagnostic testing should be completed on plaintiff, and his medications and dosages reviewed. Dr. Francisco is a board certified cardiologist. Dr. Francisco testified that the following additional

---

[3] Dr. Schneider testified that he had not reviewed all of plaintiff's medical records, only certain reports submitted to him by plaintiff's counsel.

tests should be done because plaintiff is generally at high risk of suffering additional medical complications: carotid sonogram, nuclear stress test and a repeat of the 2009 echocardiogram. However, Dr. Francisco conceded during his testimony that reasonable physicians can disagree, that plaintiff was clinically stable, and that the tests he thought should be done on plaintiff were the "gold standard" for medical care and that he practices aggressive preventive medicine. Dr. Schneider concurred with Dr. Francisco's recommendations, and emphasized that plaintiff was at high risk for complications due to his age, gender and medical history, and the testing would rule out or confirm the health risks discussed.

For plaintiff to succeed on his Eighth Amendment medical claims, he must allege and prove, by a preponderance of the evidence, a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show: 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

In the instant case, plaintiff's allegations in support of his deliberate indifference claims and motion for temporary restraining order are based on the lack of diagnostic testing. There is

3

no evidence before this court that plaintiff's medical problems are not being treated properly in his current setting. His hypertension is under control, and his dementia is being dealt with to the extent possible. The essence of plaintiff's complaint at this time is that further testing could rule out or confirm the danger of blockage of the carotid artery or coronary heart disease, either of which could be treated if discovered early enough. Although further diagnostic techniques or different forms of treatment have been recommended by the physicians who testified on plaintiff's behalf, this case is a classic example of a matter of medical judgment. Prisoners do not have a constitutional right to any particular type of treatment. Long, 86 F.3d at 765. The Eighth Amendment does not require that prisoners receive "unqualified access to health care." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The medical decisions of plaintiff's treating physician at the Department of Corrections as to what medications and dosages he believes are best for plaintiff and what type of further diagnostic testing is or is not necessary could suggest negligence or could suggest nothing more than a difference of opinion, but regardless, neither supports a constitutional claim of deliberate indifference under 42 U.S.C. § 1983. See Estelle v. Gamble, 429 U.S. 97, 107 (1976) (claims of lack of diagnosis and inadequate treatment based on allegations that more should have been done by way of diagnosis and treatment do not represent cruel and unusual punishment). Therefore, this court finds that plaintiff's allegations do not rise to the level of deliberate indifference or support the issuance of a temporary restraining order. See Oglala Sioux Tribe v. C&W Enters, Inc., 542 F.3d 224, 233 (8th Cir. 2008) (ceasing Dataphase analysis after finding no likelihood of success on merits).

IT IS, THEREFORE, RECOMMENDED that plaintiff's motion for preliminary restraining order and injunction be denied. [5, 15]

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make

4

specific written exceptions to this report and recommendation will result in a waiver of the right to appeal.  See L.R. 74.1(a)(2).

Dated this 15th day of December, 2009, at Jefferson City, Missouri.

/s/ William A. Knox

WILLIAM A. KNOX
United States Magistrate Judge